**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-CV-24819-LEIBOWITZ/AUGUSTIN-BIRCH**

**ELIA PINECREST LLC,**

**Plaintiff,**

**v.**

**ADEN HOSPITALITY GROUP, *et al.*,**

**Defendants.**
_________________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the Court on Defendants Aden Hospitality Group and Elia Riverfront LLC's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment. DE 51. The Honorable David S. Leibowitz, United States District Judge, referred the Motion for Summary Judgment to the undersigned United States Magistrate Judge for a report and recommendation. DE 63. The Court has carefully reviewed the Motion, Response [DE 56], Reply [DE 59], statements of material facts [DE 52, 55, 60, 64], the entire record, and is otherwise fully advised in the premises. For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment [DE 51] be **GRANTED**.

## I. Factual Background

Plaintiff brings this action against Defendants for several causes of action stemming from Defendants' alleged unauthorized and infringing use of Plaintiff's trademark "Elia" (the "Elia Mark") in connection with restaurant and food service operations in South Florida. DE 1. Plaintiff alleges that it "operates a restaurant concept specializing in Mediterranean cuisine"; that the

restaurant's "menu, branding, and overall presentation are centered around the preparation and service of traditional and contemporary Mediterranean dishes"; and that it is "known for offering authentic Mediterranean-style food and has established a strong association with that type of cuisine" in the South Florida market. *Id.* ¶ 13.

Relatedly, Plaintiff alleges that it has continuously and exclusively used the Elia Mark in commerce for restaurant and food-service operations since at least 2012. *Id.* ¶¶ 10, 30, 41, 51, 61. Additionally, over the years, Plaintiff asserts that it "has invested substantial resources in marketing, advertising, social media promotion, community engagement, and maintaining the quality of its food and service, resulting in significant brand recognition and customer loyalty among local residents and visitors alike." *Id.* ¶ 11.

In 2025, Plaintiff alleges that it "became aware that Defendants began operating a restaurant using Plaintiff's Elia [M]ark" in South Florida, which according to Plaintiff, offers "substantially the same type of cuisine and dining services as Plaintiff." *Id.* ¶ 12. According to Plaintiff, Defendants' restaurant offers "traditional and contemporary Mediterranean cuisine, thereby operating within the same culinary category and market segment as Plaintiff, and targeting the same consumer base seeking Mediterranean dining experiences." *Id.* ¶ 14. Because Defendants' mark "reproduces the same word, in the same spelling and format," Plaintiff asserts that "it creates a direct overlap that is likely to mislead consumers into believing that the Defendants' restaurant is affiliated with, sponsored by, or otherwise connected to Plaintiff." *Id.* ¶ 15.

In fact, Plaintiff alleges that Defendants' use of the Elia Mark has caused and is continuing to cause actual confusion among consumers, "several of whom have inquired whether the businesses are affiliated, franchised, or otherwise connected." *Id.* ¶ 17. Indeed, "[s]ince Defendants

began using the Elia Mark in connection with its restaurant operations," Plaintiff asserts that "multiple consumers have approached Plaintiff's staff and management under the mistaken belief that Defendants' restaurant is owned, operated, or affiliated with Plaintiff." *Id.* ¶ 18. This, Plaintiff emphasizes, "undermine[s] the distinctiveness of the Elia [M]ark, dilute[s] the value of Plaintiff's brand, [] interfere[s] with Plaintiff's ability to control the quality and perception of its services," and "directly harms Plaintiff's customer relationships, business opportunities, and the trust the public places in its restaurants." *Id.* ¶ 19.

Accordingly, on July 11, 2025, Plaintiff sent Defendants a cease-and-desist letter, "notifying Defendants of Plaintiff's prior and established rights in the Elia [M]ark and demanding that Defendants immediately cease using" the same. *Id.* ¶ 23. Defendants did not respond and continue to use the Elia Mark. *Id.* ¶ 24.

Based on the foregoing, Plaintiff asserts four causes of action against Defendants – Count I – Trademark Infringement and False Designation of Origin in Violation of the Lanham Act; Count II – Unfair Competition in Violation of Florida Common Law; Count III – Trademark Infringement in Violation of Florida Common Law; and Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). DE 1 at 7–14.

## II. Summary Judgment Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts that "are irrelevant or unnecessary" are not material. *Id.* A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A court ruling on a summary judgment motion "view[s] all of the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quotation marks omitted). The court "may not weigh conflicting evidence or make credibility determinations of its own." *Id.* (quotation marks omitted). If the record presents genuinely disputed issues of material fact, then the court must deny summary judgment and proceed to trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

The movant may carry its burden by showing the court that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett,* 477 U.S. 317, 325 (1986). If the movant meets that initial burden, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quotation marks omitted). "The nonmoving party does not satisfy its burden if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Jones*, 683 F.3d at 1292 (quotation marks omitted). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *id.* (quotation marks omitted), and is required to go beyond the pleadings and present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 325.

## III. Defendants' Motion

### A. Count I - Trademark Infringement Under § 43(a) of the Lanham Act

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate

the source of the goods." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition by prohibiting the use in interstate commerce of any "word, term, name, symbol or device, . . . or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Id.* § 1125(a).

To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show "(1) that it owns a valid mark with priority, and (2) that the defendant's mark is likely to cause consumer confusion with the plaintiff's mark." *Deltona Transformer Corp. v. NOCO Co.*, 186 F.4th 1313, 1328 (11th Cir. 2026).

**1. Whether the Elia Mark Is Valid**

In order for Defendants to infringe on Plaintiff's Elia Mark, Plaintiff must have a protectable property interest in the Elia Mark. *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991). "Ordinarily, such an interest is derived when a business uses a mark to represent its services." *Id.* "Each time a business uses a mark, it enhances the customer recognition of the mark and its association with the service, thereby inuring to the business greater rights in the mark." *Id.* A business, however, "does not automatically obtain rights in a mark by using it," rather it "will obtain rights in a mark upon first use only if the mark is 'inherently distinctive.'" *Id.* Alternatively, "[i]f the mark is not inherently distinctive, a business may obtain rights in the mark when it attains a secondary meaning." *Id.* In short, the threshold question in any trademark infringement action is whether the word or phrase is initially protectable. *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979).

To assist in making this determination, the Eleventh Circuit has traditionally divided the universe of potential trademarks into four categories of legal protectability. Listed in ascending order of strength, those categories are:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service.

*Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010). An example of each category is helpful to the Court's analysis: (1) generic – a book-selling company called "Books"; (2) descriptive – an eyeglasses store called "Vision Center"; (3) suggestive – a company selling coolers called "Igloo," where "the name is a real word that bears only an oblique relationship to the product"; and (4) arbitrary – a company selling computers called "Apple," where "the name is a real word that has nothing to do with the product," or fanciful – a telecommunications company called "Verizon," where "the name is a made-up word." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 783 (11th Cir. 2020).

The latter two categories – suggestive and arbitrary or fanciful marks – "are deemed inherently distinctive because their intrinsic nature serves to identify a particular source of a product and are generally entitled to trademark protection." *Tana*, 611 F.3d at 774 (quotation marks omitted). "Generic marks, on the other hand, are generally incapable of receiving trademark protection." *Id.* And, "[d]escriptive marks, though not inherently distinctive, may become sufficiently distinctive to enjoy trademark protection by acquiring 'secondary meaning.'" *Id.*

Here, in its Complaint, Plaintiff seemingly alleges that the Elia Mark is descriptive. *See* DE 1 ¶¶ 31, 42, 52, ("Plaintiff's Elia mark has become distinctive within the South Florida restaurant market and has acquired secondary meaning"). In their Motion, Defendants argue that,

if the Elia Mark is descriptive, Plaintiff has failed to make a showing sufficient to establish the existence of the mark's secondary meaning. DE 51 at 5–8. In response, Plaintiff argues that the Elia Mark is suggestive, not descriptive, and, therefore, it need not prove secondary meaning. The Court agrees with Plaintiff.

As an initial matter, under the "doctrine of foreign equivalents," foreign words are translated into English before undergoing this strength-of-mark analysis. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, n.3 (11th Cir. 1999). Here, it is undisputed that Plaintiff's Elia Mark means "olive" or "olive tree" in Greek and was selected for its connection to the type of cuisine Plaintiff serves. DE 52 ¶ 13; DE 55 ¶ 13.

A Mediterranean restaurant called "Olive" or "Olive Tree" is neither generic, arbitrary, nor fanciful. The name is not generic because it does not identify the basic nature of the product or service; it is not arbitrary because it bears at least some relationship to the restaurant's cuisine; and it is not fanciful because it consists of existing words rather than a made-up term. Additionally, such a restaurant name is not itself descriptive because it does not identify a characteristic or quality of a product or service. Rather, the name requires "imagination, thought, and perception," *Vision Ctr.*, 596 F.2d at 116, to reach a conclusion as to the nature of the goods and services provided by the restaurant and is, therefore, suggestive.

**2. Whether Plaintiff Has Priority over the Elia Mark**

Defendants argue that Plaintiff cannot establish priority in the Elia Mark because, although Plaintiff alleges continuous and exclusive use of the mark since 2012, Elia Group LLC – not Plaintiff – filed the 2015 federal trademark application representing that it had used the mark since 2012. DE 51 at 4–5. Because Plaintiff was not formed until 2018 and has produced no "assignment, asset transfer, merger, trademark license, transfer of goodwill, or other chain-of-title document"

establishing how it acquired Elia Group LLC's rights in the mark, Defendants contend that judgment should be entered against Plaintiff. *Id.*

However, a plaintiff need not own a federally registered trademark to establish priority under the Lanham Act. *Tana*, 611 F.3d at 773. Indeed, the Eleventh Circuit has recognized that "the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Id.* In such cases, priority turns on whether the plaintiff's actual commercial use of the mark predates the defendant's use. *See Adidas AG v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 25-23816-CIV, 2026 WL 3034647, at *3 (S.D. Fla. July 7, 2026) ("A plaintiff can show that his mark has priority over a defendant's mark if he began using the mark before the defendant began using its mark.").

Here, the distinction Defendants draw between Plaintiff's alleged use beginning in 2012 through a transfer of rights from Elia Group LLC and Plaintiff's use beginning in 2018, when Plaintiff was formed, does not defeat priority over Defendants' later use and is, therefore, immaterial. *Anderson*, 477 U.S. at 248. Under either scenario, Plaintiff's use predates Defendants' use, which began sometime in 2024. Accordingly, Plaintiff has established priority of use over Defendants.

### 3. Whether There Is a Likelihood of Confusion

In evaluating whether there is a likelihood of confusion between two marks, the Eleventh Circuit considers seven factors:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the

> holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana*, 611 F.3d at 774–75. In their Motion, Defendants argue that most of the factors cut against confusion and that, considered together, they do not permit a reasonable finding of likelihood of confusion. DE 51 at 8–11. In response, Plaintiff argues that the record evidence conclusively establishes that there has been and continues to be actual customer confusion. DE 56 at 9–10.

The Eleventh Circuit's analysis in *Tana* is instructive. There, as here, the court was confronted with a trademark infringement action concerning two restaurants that shared nearly identical names. 611 F.3d at 770. The plaintiff in that action opened an Italian-themed restaurant named "Dan Tana's" in California, which served "traditional Italian fare, and [] resemble[d] an old-world Italian trattoria with red-and-white checkered table cloths and straw-colored wine flasks hanging from the ceiling." *Id.* at 771. Years later, defendant opened the first of two "upscale sports restaurants" named "Dantanna's" in Georgia, which served "contemporary American cuisine with a 'surf and turf' theme." *Id.* Plaintiff sued defendants for federal trademark infringement and other causes of action. *Id.* Eventually, defendants "moved for summary judgment arguing that, as a matter of law, [p]laintiff could not establish the likelihood of confusion necessary to subject them to liability." *Id.* at 771–72. The district court agreed and granted judgment in favor of defendants on all counts. *Id.* at 772. Following plaintiff's appeal, the Eleventh Circuit affirmed. *Id.* at 783.

**a. Strength of the Mark**

In assessing a mark's strength, the Court considers two factors: (1) its conceptual strength and (2) its commercial strength. *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 948–49 (11th Cir. 2023). "Conceptual strength describes the *potential* of a mark to aid consumer

recognition," which is evaluated by placing the mark "on the sliding scale of trademark strength, from weakest to strongest: (1) generic, (2) descriptive, (3) suggestive, and (4) fanciful or arbitrary." *Id.* (emphasis added). Here, as explained above, the Elia Mark is suggestive and, therefore, has relative conceptual strength.

Commercial strength, on the other hand, "refers to the real-world consumer recognition of a mark, most often created by the efforts and work of the mark holder." *Id.* at 950. "Commonly used evidence of commercial strength includes third party use; advertising and promotion; sales and number and types of customers; recognition by trade, media, and customers; and survey of likely customers." *Id.* Here, there is no such evidence. Indeed, when asked to identify all entities other than Plaintiff that had owned or used the Elia Mark in commerce, Plaintiff identified no third parties. DE 52 ¶ 7; DE 55 ¶ 7. Moreover, Plaintiff is deemed to admit that "it has conducted no consumer-perception analysis, has no survey demonstrating exclusive consumer association of [the Elia Mark] with Plaintiff, and has no document showing that a majority of South Florida consumers associate [the Elia Mark] with Plaintiff"; that it is not famous or nationally recognized; and it has no documents "showing annual advertising expenditures exceeding $10,000 in any calendar year." DE 52 ¶¶ 25–27; DE 55 ¶¶ 25–27.

Still, the Court considers the Elia Mark's conceptual strength as weighing in favor of a finding of likelihood of confusion.

**b. Similarity of the Marks**

This factor requires the Court "to examine the similarity between the parties' marks" – "[t]he greater the similarity, the greater the likelihood of confusion." *FCOA LLC*, 57 F.4th at 952. The marks need not be identical to support a finding of similarity – "the key is to determine if the similarities are sufficient to deceive the public." *Id.* Here, Plaintiff's and Defendants' marks share

the same spelling and lowercase styling, rendering them virtually identical. Accordingly, this factor weighs in favor of a finding of likelihood of confusion. *See Tana*, 611 F.3d at 775 (concluding that this factor favored a finding of likelihood of confusion where the marks had "identical spelling but for a single letter and the use of a space, an identical use of the possessive, and an identical pronunciation").

**c. Similarity Between the Goods and Services**

This factor "concerns whether the products [or services] are of a kind the public could *think* originate from a single source." *FCOA LLC*, 57 F.4th at 953 (emphasis in original).

Here, a comparison of the goods and services offered under the parties' marks reveals strong evidence that consumers would be unlikely to confuse the two restaurants. The restaurants serve distinct cuisines: Defendants' restaurant serves Italian food but does not offer Greek or Turkish cuisine, like Plaintiff's restaurant. DE 52-1; DE 52-4 at 18:17-25; DE 55-3 at 20:19-22. Moreover, Plaintiff admits the two restaurants differ in physical layouts, design elements, menus, and branding. DE 52 ¶¶ 31–33; DE 55 ¶¶ 31–33. In fact, the only apparent commonality between the two restaurants is that they are both dining establishments.

The restaurants also differ in their service models and price points. Plaintiff characterizes its service as "casual table service," DE 55-1, and its menu lists breakfast plates, salads, and sandwiches priced below twelve (12) dollars. *Id.* By contrast, Defendants characterize their restaurant as an "upscale" establishment featuring high-priced menu items, live entertainment at least four times per week, and riverfront views. DE 52-4 at 22:1–4, 12–16; DE 52-5 ¶ 5; DE 55-3. These differences in cuisine, ambiance, and pricing further distinguish the services offered under the parties' respective marks.

Accordingly, this factor does not support a finding of likelihood of confusion. *See Tana*, 611 F.3d at 777–78 (concluding that the third factor did not weigh in favor of a likelihood of confusion where the parties' restaurants offered distinct cuisines and ambiances).

**d. Similarity of Sales Methods, Sales Outlets, and Customer Base**

The "primary focus" of this factor "is on the overlap of the customer bases, because the greater the overlap, the greater the likelihood that consumers will be exposed to both marks and become confused." *FCOA LLC*, 57 F.4th at 954. "Likewise, the similarity of trade channels analysis focuses on whether the medium (e.g., stores, agents, online, mail, etc.) that customers frequent would expose them to both marks, not on whether the products or services are sold in the same location or manner." *Id.*

Here, the differences between the parties' restaurants, described above, also demonstrate that their customers are dissimilar. Accordingly, this factor does not support a finding of likelihood of confusion. *See Tana*, 611 F.3d at 778 (finding fourth factor did not weigh in favor of a likelihood of confusion because the "differences between the parties' restaurants . . . also demonstrate that their customers are dissimilar, which is an aspect of the similarity of the parties' actual sales methods").

**e. Similarity of Advertising Methods**

This factor "focuses on the audience reached by the advertisements of the parties." *FCOA LLC*, 57 F.4th at 955. As above, "the greater the overlap or similarity of the audiences, the greater the likelihood of confusion." *Id.* On the present record, the only similarity in the advertising channels used by the two parties is their maintenance of websites on the World Wide Web. DE 52-1; 55-3. Like in *Tana*, "[t]his similarity would dispel rather than cause confusion, however, because the websites are separate and distinct, suggesting two completely unrelated business

entities." *Tana*, 611 F.3d at 778. Accordingly, this factor weighs against a finding of likelihood of confusion.

**f. Intent**

There is also scant evidence of any intention of Defendants to misappropriate Plaintiff's Elia Mark. Indeed, Plaintiff seemingly concedes this point. *See* DE 56 at 9 ("As far as the intent to infringe factor, Defendants may not have intended to infringe when they commenced operations . . . ."). Further, Plaintiff is deemed to admit that it (1) "is unaware of any communication in which Defendants stated an intent to trade on Plaintiff's goodwill" and (2) "has no documents evidencing that Defendants intended to copy Plaintiff." DE 52 ¶¶ 38–39; DE 55 ¶¶ 38–39.

Additionally, Engin Akdemir – part-owner and managing partner of Defendant Aden Hospitality Group and sole owner of Defendant Elia Riverfront LLC – proffered evidence of an independent and innocent origin for his restaurant's name: his daughter's name, Eliana. *See* DE 55-5 ¶ 8 ("The name Elia was selected independently. My daughter's name is Eliana, and that personal connection was part of why the name appealed to me."); *see also* DE 52-4 at 15:23–16:14; DE 52-5 ¶ 8. And, "[w]here a story of the creation of a mark is undisputed and shows an innocent origin, [the Eleventh Circuit has] concluded that there is no intent of misappropriation contributing to a likelihood of confusion." *Tana*, 611 F.3d at 779.

Moreover, Mr. Akdemir testified in his deposition and reaffirmed in his sworn affidavit that he did not learn of Plaintiff's restaurant until sometime after he had already selected the name for his own restaurant. *See* DE 52-5 ¶ 6 ("Before Elia on the River opened, I had never heard of Elia Pinecrest LLC, Elia Cafe, or Plaintiff's claimed Elia restaurant business."); *see also* DE 52-4 at 14:21–15:14. The affidavit and his testimony remain uncontroverted by any material evidence.

Finally, "a factfinder is less likely to find intentional infringement where a defendant uses his own name in creating his mark." *Tana*, 611 F.3d at 779. Although the record indicates that Mr.

Akdemir used his daughter's name as opposed to his own name for his restaurant, "the source of the name is personal and familial and further support for [this Court's] conclusion that no reasonable jury could find intentional infringement on these facts." *Id.*

Accordingly, this factor weighs against a finding of likelihood of confusion. *See id.* at 778–79 (concluding that the sixth factor did not weigh in favor of a likelihood of confusion where defendants presented undisputed evidence that they independently and innocently selected their mark before learning of plaintiff's restaurant and that the name derived from their owner's children's names, reflecting a personal and familial connection).

**g. Actual Confusion**

This factor "asks whether there is evidence in fact of confusion," *FCOA LLC*, 57 F.4th at 956, and is "the most persuasive evidence in assessing likelihood of confusion." *Tana*, 611 F.3d at 779. Importantly, courts consider not only whether actual confusion exists, but also "the extent of such confusion." *Id.*

Here, Plaintiff has presented nominal evidence of actual confusion among consumers. The only evidence Plaintiff identifies consists of two messages: (1) a WhatsApp message asking Plaintiff's principal whether Defendants' restaurant belonged to him, and (2) an Instagram message from a purported "old customer" stating that he had made a reservation at Defendants' restaurant believing it was also owned by Plaintiff. DE 55-1. Beyond these two anecdotal accounts, Plaintiff admits that it "does not have a single written record of actual confusion and has no evidence of actual confusion documented in writing"; that its confusion claim rests on anecdotal reports rather than statistical evidence; and that it has "no document identifying a customer who chose Defendants over Plaintiff due to confusion." DE 52 ¶¶ 34–36; DE 55 ¶¶ 34–36.

No reasonable jury would conclude that an inquiry by only two potential customers of a possible connection between the restaurants demonstrates actual confusion in the consuming

public. Accordingly, this factor does not support a finding of likelihood of confusion. *See Tana*, 611 F.3d at 779 (concluding that the seventh factor did not weigh in favor of a likelihood of confusion because the plaintiff's evidence was "weak," consisting of one affidavit from a patron who visited defendants' restaurant believing the restaurants were affiliated based on their names, and two additional instances in which customers inquired about a possible affiliation between the restaurants).

**h. The Factors Weigh Against a Finding of Likelihood of Confusion**

Viewing the relevant factors as a whole, there is minimal evidence of a likelihood of confusion between Plaintiff's and Defendants' restaurants aside from the conceptual strength of the Elia Mark and the similarity of their names. The remaining factors all weigh against a likelihood of confusion, some overwhelmingly so. There are stark differences between the two restaurants' cuisine and ambiance. There is virtually no evidence of confusion in advertising channels. No reasonable jury could find that Defendants intended to trade on Plaintiff's mark, and there is negligible evidence of any actual confusion between the two restaurants.

"In sum, Plaintiff has failed to adduce sufficient evidence upon which a reasonable jury could find a likelihood of confusion between Plaintiff's and Defendants' marks." *Id.* at 782. Accordingly, summary judgment should be granted to Defendants on Plaintiff's Lanham Act count. *See id.*

**B. Counts II, III, and IV**

Because the legal analysis is the same for all four of Plaintiff's causes of action, the remaining grounds for relief asserted by Plaintiff are without merit and warrant little discussion. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 652 (11th Cir. 2007) ("Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law."); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d

1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."); *Crystal Entm't & Filmworks, Inc. v. Jurado,* 643 F.3d 1313, 1323 (11th Cir.2011) ("[T]he legal standards we apply to [the FDUTPA] claim are the same as those we have applied under section 43(a) of the Lanham Act.").

Accordingly, because Defendants are entitled to summary judgment as to Count I, they should also be entitled to summary judgment as to Counts II, III, and IV. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (affirming summary judgment for defendants on plaintiff's FDUTPA and Florida common-law trademark infringement and unfair competition claims based on the same analysis supporting summary judgment on the Lanham Act claim).

## IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment [DE 51] be **GRANTED**. Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 4th day of November, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE